[No. 1402.]

Jesse Dyson v. The State.

Practice—Charge of the Court—Reasonable Doubt.—The doctrine of reasonable doubt is applicable alone to criminative facts, and these the jury must believe beyond a reasonable doubt. Exculpatory facts need not be believed beyond a reasonable doubt in order to acquit. See the opinion *in extenso* for a charge of the court *held* error, as contrary to these principles.

Appeal from the District Court of Orange. Tried below before the Hon. W. H. Ford.

The indictment was for the murder of Lewis Jackson. The verdict was for manslaughter, and it imposed as penalty a term of five years in the penitentiary.

B. C. Miller was the first witness for the State. He testified, in substance, that he was standing within ten feet of the three parties to the difficulty, at the time it took place, in the town of Orange, Texas. Isaac Dyson, the defendant's brother, was standing quietly near or against the wall of the "Daisy" saloon. The deceased walked rapidly down the street, passed the witness, and stopped as he got opposite Isaac Dyson, spoke to him, telling him to throw up his hands and at the same time presented a pistol which he held above Isaac Dyson's head. With his left hand he grasped Isaac Dyson's collar or shoulder, and told him to "come on," that he was going to take him to the sheriff. Isaac Dyson resisted. The deceased attempted to drag him, holding his pistol in his right hand. Isaac Dyson got hold of the deceased's pistol-hand, the two holding the pistol between them, pointing upwards and above their heads. In this position it was discharged. At this juncture the witness stepped off the sidewalk and the defendant, who was standing behind the witness, stepped up to within five feet of the deceased and shot him twice. Isaac Dyson told the defendant to shoot no more, and ran.

Isaac Dyson and the deceased had quit scuffling when the deceased's pistol was discharged, but were standing holding the

pistol up and above their heads. The deceased at no time pointed his pistol towards either Isaac Dyson or the defendant.

The narrative of Frank Mulligan, the next witness for the State, was, substantially, that when he came out of the "Sample Room" saloon he saw the deceased, who had hurriedly left him a few moments before, and Isaac Dyson, some seventy-five steps off, scuffling over an object held by the two above their heads. After they had apparently ceased scuffling, and were standing holding the object, which proved to be a pistol, it was discharged, and the defendant ran up and shot the deceased twice, once in the side of the body, and once in the side of the head. The deceased at no time pointed his pistol towards Isaac Dyson or the defendant.

A. C. Stewart, who testified that he stood on the sidewalk some thirty or forty feet distant from the parties, corroborated the statements of the foregoing witness relating to the occurrences immediately preceding and at the time of the shooting.

Three or four other witnesses, testifying for the State, all of them occupying positions commanding a perfect view of the difficulty in which the deceased was killed, concurred in the accounts of the witnesses above set out.

E. Poinboeff, for the State, testified that about ten days before the fatal rencounter, the defendant was at his house inquiring for the deceased. He exhibited a pistol to the witness, and said that if the defendant "ran on to them again, it would cause trouble;" that he "intended to use his pistol."

Isaac Dyson, brother to the defendant, testified that he and the defendant were walking down one of the streets of Orange on the day in question, and when they got near Brazealle's store he heard some one running up behind him. He turned to see who it was, when the deceased threw a pistol down on him, aimed in his face, and told him to throw up his hands; that he was going to arrest the witness and take him to the sheriff. The witness threw up his hands, and asked why he was to be arrested; that he had done nothing. The deceased then shoved him back, repeating his words, and shoving his pistol against witness's breast, said he would shoot the witness if he did not do as he ordered. The witness caught the pistol and, scuffling with the deceased, kept it up, the deceased all the while trying to force it down to cover the witness, who was trying to keep it up. In this attitude the pistol was discharged. Thereupon the defendant, who had jumped behind the witness, fired on the de-

ceased twice. The witness told the defendant to fire no more, and he did not.

This witness testified that he told the deceased to give his pistol to some one standing about, and that he would release it, whereupon the deceased agreed to, and did surrender his pistol to some one. The witness does not say whether this occurred before or after the shooting. He stated, also, that the discharge of deceased's pistol slightly wounded his hand, breaking the skin and powder burning it.

Brazealle, for the defense, testified, in substance, that he saw a part of the difficulty, starting back into the store when he saw who it was engaged in the scuffle, and turning back when the pistol of the deceased was discharged. After the defendant shot the deceased, the witness Isaac Dyson told the deceased to surrender the pistol to some one, and he gave it to Matthews.

R. H. Smith, county clerk, and G. W. Michael, sheriff, testified that the deceased held no position as constable, deputy sheriff or other police appointment at the time of the shooting.

C. L. Goodman testified, for the defense, that he saw the fight from a point seventy-five or a hundred feet distant. The pistol of the deceased, during most of the struggle between the deceased and Isaac Dyson, was kept elevated above their heads, but when it was discharged the witness thought it was held lower down.

B. C. Miller, in rebuttal, testified, for the State, that he saw the entire difficulty from a point ten feet distant. He did not hear the deceased, at any time, tell Dyson he would shoot him if he did not hold up his hands. He did not see the deceased at any time throw or present his pistol towards either of the Dysons, or make any attempt to fire on them. His opportunity was good, and he saw and heard all that passed.

Sutherland and Brazealle, recalled by the State, in rebuttal, testified that they did not hear the deceased threaten to shoot Isaac Dyson if he did not throw up his hands, nor did they at any time see the deceased present his pistol towards either of the Dysons. They each would have seen and heard these occurrences had they happened.

The sheriff, in his testimony, stated that he arrested Isaac Dyson immediately after the shooting, but found no evidences on his hands, or elsewhere, of having been shot or powder burned.

The motion for new trial assailed the action of the court in

overruling an application for continuance, and in refusing to give charges asked; assailed the verdict for various informalities, and as unsupported by the evidence, and attacked the charge of the court as given.

*J. T. Stark,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

HURT, J. The appellant was convicted of manslaughter. The learned judge charged the jury that, "If from the evidence in this case the jury believe beyond a reasonable doubt that the defendant Jesse Dyson did, in Orange county, Texas, on or about the thirtieth day of March, 1881, fire upon, shoot and kill Lewis Jackson, and that at the time he so shot and killed Lewis Jackson that Lewis Jackson was making an unlawful and violent attack on Isaac Dyson, under circumstances by which the defendant might have reasonably inferred that it was the intention of Lewis Jackson to take the life of Isaac Dyson, or to do him some serious bodily injury, and that the defendant Jesse Dyson, acting and being induced by a fear of such danger to the life or person of Isaac Dyson at the hand of Lewis Jackson by virtue of such violent attack, shot and killed Lewis Jackson, and that in so doing he used no more force than was necessary (reasonably) under all the facts and circumstances surrounding the difficulty or assault, then the defendant would be justified, and you will find him not guilty." * * *

This charge is radically wrong. The jury are not required to believe exculpatory facts beyond a reasonable doubt, to authorize them to acquit. The doctrine of reasonable doubt is applicable alone to criminative facts. These the jury must believe beyond a reasonable doubt.

This error in the charge is fatal to the judgment, which is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered February 3, 1883.